UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| NICHOLAS RYAN HEMSHER,<br><br>          Movant,<br><br>    vs.<br><br>UNITED STATES OF AMERICA,<br><br>          Respondent. | 4:19-CV-04172-KES<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is before the court on Nicholas Ryan Hemsher's *pro se* motion to vacate, correct or set aside his sentence pursuant to 28 U.S.C. § 2255. See Docket No. 1.[1] Respondent the United States of America ("government") now moves to dismiss Mr. Hemsher's motion without holding an evidentiary hearing. See Docket No. 20. These matters were referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge.

---

[1] The court refers to documents filed in Mr. Hemsher's § 2255 matter by simply citing "Docket No." The court refers to documents filed in Mr. Hemsher's underlying criminal matter, United States v. Hemsher, 4:16-cr-40070-KES (D.S.D.) by citing "CR Docket No."

## FACTS

### A.    Indictment and Pretrial Proceedings

On June 21, 2016, a grand jury issued an indictment against Mr. Hemsher and codefendants Robert John Hulscher, Nicolas Allyn Wingler, and Matthew Eugene Marshall.  See CR Docket No. 1.  Count three of the indictment charged Mr. Hemsher with knowingly possessing eight stolen firearms on or about February 20-22, 2016, in the District of South Dakota. Id. at pp. 2-3.  Count four charged that during the same time frame, Mr. Hemsher illegally possessed the same firearms after having previously been convicted of a felony.  Id. at pp. 3-4.

Codefendant Hulscher was charged with stealing the firearms and also illegally possessing them due to a prior felony conviction.  Id. at pp. 1-2. Codefendant Wingler was charged with knowingly possessing stolen firearms. Id. at p. 4.  And codefendant Marshall was charged with illegally possessing firearms after having previously been convicted of a felony.  Id. at pp. 4-5.

Mr. Hemsher had his initial appearance and arraignment on July 7, 2016, at which time the court appointed attorney Rich Engels to represent him. See CR Docket No. 13.  The court detained Mr. Hemsher following the hearing. See CR Docket No. 14.  Counsel filed a motion to reconsider Mr. Hemsher's release.  See Docket No. 44.  A hearing was held and the court denied the motion, continuing Mr. Hemsher's detention.  See CR Docket No. 76.

Codefendant Hulscher filed a motion to sever his trial from Mr. Hemsher's trial. See CR Docket No. 110. Mr. Hemsher's counsel notified the court he did not object to the motion. See Docket No. 118. Hulscher's motion prompted the government to move for a 30-day continuance of the trial date. See Docket No. 117. The court granted a 14-day continuance. See CR Docket No. 120. The court thereafter denied Hulscher's motion to sever. See CR Docket No. 130.

Mr. Hemsher's counsel moved to exclude from trial a statement by codefendant Wingler that implicated Mr. Hemsher. See CR Docket No. 112. The court granted that motion, with the caveat that if Mr. Hemsher testified at trial, the government could offer Wingler's statement. See Docket No. 130.

Trial was set to begin on January 3, 2017, but on the eve of trial, the government provided additional discovery to defendants in the form of Facebook Messenger messages. See CR Docket No. 172. In view of this evidence, counsel for Mr. Hemsher orally moved to continue the trial in order to allow counsel to prepare to meet this additional evidence. Id. The court granted the motion. Id. The trial date was rescheduled to begin January 24. See CR Docket No. 174.

On January 10, 2017, the government obtained a superseding indictment against Hulscher and Mr. Hemsher charging them with the same crimes in the same counts as the original indictment, but omitting codefendants Wingler and Marshall and their respective charges from the indictment. See Docket No. 182. A continuance was again sought and

3

granted, with a new trial date of February 22, 2017, being set.  See CR Docket Nos. 204, 210.

On February 7, 2017, the government again obtained another indictment, this one denominated the "second superseding indictment."  See CR. Docket No. 241.  The third indictment made no changes to the charges against Mr. Hemsher, but did change the dates in the counts alleged against codefendant Hulscher.  Id.

**B.    Jury Trial**

A pretrial conference was held on February 21, 2017.  See CR Docket No. 272.  A jury trial was held on February 22-24, 2017, resulting in convictions for Mr. Hemsher on both charges he faced, and acquittals for codefendant Hulscher on his two charges.  See CR Docket No. 284.

**C.    Post-Trial and Sentencing**

**1.    The PSR and Objections to It**

Sentencing for Mr. Hemsher was set for May 15, 2017.  See CR Docket No. 292.  To that end, a draft presentence investigation report ("PSR") was prepared and delivered to Mr. Hemsher and his counsel on April 10, 2017.  See CR Docket No. 311.

After the trial, Mr. Hemsher made a motion to discharge his attorney, Mr. Engels, and to have new counsel appointed to represent him.  See CR Docket No. 312.  The district court held an *ex parte* hearing with Mr. Engels and Mr. Hemsher at which Mr. Hemsher told the court he wished to withdraw

4

the motion.  <u>See</u> CR Docket No. 314.  Accordingly, the court denied the motion

as moot.  <u>See</u> CR Docket No. 315.

On April 24, 2017, counsel for Mr. Hemsher filed objections to the PSR.

<u>See</u> Docket No. 320.  Nine objections were asserted, as follows:

1.  Paragraphs 7-12 describing the offense conduct.  The basis for the objection was Mr. Hemsher maintained his innocence.

2.  Paragraph 18 imposing a four-level increase to the base offense level under the United States Sentencing Guidelines ("USSG") because Mr. Hemsher possessed eight firearms.  The basis for the objection was no special interrogatory had been submitted to the jury and the jury's verdict of guilt required only that the jury find Mr. Hemsher possessed at least one firearm.

3.  Paragraph 19 imposing a two-level increase under the USSG based on the stolen status of the firearms.  The basis for the objection was that the base offense level—possession of a stolen firearm—already took the status of the firearms into account, thus the increase was really "double counting."

4.  Paragraph 20 imposing a four-level increase under the USSG because the firearms were possessed in connection with another felony offense.  The basis for the objection was there was no evidence Mr. Hemsher was engaged in any other felony other than possessing stolen firearms by a felon.  Counsel pointed out that paragraph 16 of the PSR correctly grouped the two charges together because they were related to one another and involved the same set of facts.  Likewise, this four-level increase could not be imposed, counsel argued, based on the two offenses of conviction.  Counsel also argued the four-level increase could not be imposed on the basis that Mr. Hemsher was dealing drugs because no evidence of drug felonies were admitted at trial other than government counsel's argument, which was not evidence.

5.  Paragraphs 24 and 27 setting forth the adjusted and the total offense level.  The basis for the objection was that, if the court sustained defendant's foregoing objections, it would result in an adjusted offense level of 14.  Counsel also urged the application of amendments to the USSG.

6.  Paragraph 70 set forth facts regarding a failed attempt by Mr. Hemsher to obtain a protection order against Katelynn Wilson.

Counsel objected that the information presented was incomplete and should have included the fact that Mr. Hemsher's girlfriend succeeded in obtaining a protection order against Katelynn Wilson.

7.     Paragraph 145 setting forth the USSG sentencing range. Counsel argued this paragraph should be modified if the court sustained his prior objections numbered 1-5.

8.     Paragraphs 154 & 155 setting forth the statutory and USSG ranges for fines. Counsel argued the court should impose no fines or costs of prosecution as Mr. Hemsher was indigent.

9.     Paragraphs 158 & 159. Counsel asserted there *were* grounds warranting a departure or downward variance from the USSG range. Specifically, counsel argued consideration of the proposed amendments to the USSG lowering offense levels.

See CR Docket No. 320. Mr. Hemsher's counsel also filed a sentencing memorandum responding to the government's objection (below), and further explaining the basis for each objection interposed on Mr. Hemsher's behalf. See CR Docket No. 336.

The government filed its own objection to the draft PSR, arguing that Mr. Hemsher's USSG base offense level should be increased due to obstruction of justice. See CR Docket No. 321.

The PSR author rejected objections 1-5 and 7-9 of Mr. Hemsher, but accepted objection 6 and added the information to paragraph 70. See CR Docket No. 332. The final PSR also left it to the court to determine at sentencing whether the government's objection should be sustained. Id.

The final PSR filed on May 5, 2017, calculated Mr. Hemsher's advisory USSG sentencing range as follows:

Base Offense Level                                    14

Increase due to possessing 8 firearms                 +4

6

USSG § 2K2.1(b)(1)(B)

Increase due to firearms being stolen                                    +2
USSG § 2K2.1(b)(4)(A)

Increase for use of firearm in another felony                    +4

**TOTAL OFFENSE LEVEL**                                              **24**

See CR docket No. 331 at pp. 6-7, ¶¶ 17-27.

The PSR reviewed Mr. Hemsher's criminal history and accorded 21 points

for prior convictions, which placed Mr. Hemsher in criminal history category

VI.  Id. at pp. 7-18, ¶¶ 28-63.  Based on a total offense level of 24 and criminal

history category VI, the PSR set forth an advisory USSG sentencing range of

100-125 months.  Id. at p. 33, ¶¶144-45.  The PSR recited the maximum

statutory term of imprisonment of 10 years (120 months) for each of the two

counts of which the jury convicted Mr. Hemsher.  Id.

    **2.**    **The Sentencing Hearing**

Mr. Hemsher's sentencing hearing was held on May 15, 2017.  See CR

Docket No. 355.  The court addressed Mr. Hemsher's objections first.  Id. at

p. 2.  Regarding objection 1, the court found the recitation of facts in the PSR

was supported by the evidence adduced at trial and therefore overruled the

objection.  Id. at pp. 2-3.

Regarding objection 2, Mr. Engels pointed out the jury was never asked

to decide how many firearms Mr. Hemsher possessed.  Id. at p. 3.  Reviewing

the evidence at trial, he asserted it was most likely the jury concluded

Mr. Hemsher possessed only one gun that was found under the driver's seat of

a vehicle which Mr. Hemsher was the last person to drive.  Id. at pp. 3-4.

Counsel argued the evidence for possession of the other seven firearms rested solely on the testimony of codefendants Wingler and Marshall and that the credibility of those witnesses was not good.  Id.

The court noted a special verdict was not necessary for the USSG increase to apply; instead, the evidence of possession of eight firearms simply had to be supported by the evidence from trial.  Id. at pp. 4-5.  The court overruled the objection, noting Wingler's testimony that he received seven firearms from Mr. Hemsher was corroborated by the fact that law enforcement observed Mr. Hemsher coming to Wingler's apartment at least twice while they were surveilling Wingler, thus establishing some connection between Wingler and Mr. Hemsher.  Id. at p. 5.

Objection 3 was withdrawn by counsel because further research by him revealed the increase based on the fact the firearms were stolen was correctly applied.  Id. at pp. 5-6.

As to objection 4, counsel argued the four-level increase should not apply because Mr. Hemsher was never charged with another felony offense and there was no evidence he was involved in the actual theft of the firearms.  Id. at p. 6. He distinguished the cases cited by the government in response to the objection.  Id.  The government responded that there was evidence at trial that Mr. Hemsher and Wingler were in a conspiracy to traffick stolen firearms, and that constituted the other felony justifying the USSG increase.  Id. at p. 7.

The court adopted the government's argument and overruled the defense objection, finding that the other felony offense being committed at the time

8

Mr. Hemsher possessed the firearms was trafficking in stolen firearms. Id. The court noted the text messages from Mr. Hemsher to Wingler, introduced at trial, showed the two men had an agreement to attempt to traffick the stolen firearms. Id. at pp. 7-8. The court distinguished the facts adduced at trial from a case where all a defendant is guilty of is possessing stolen firearms. Id. at p. 8. Here, Mr. Hemsher did not just possess but also planned to sell the firearms in order to raise money. Id.

The court overruled objection 5 because it was based on the previous objections which were also overruled. Id. The court inquired whether counsel for Mr. Hemsher wanted to address the proposed amendment to the USSG, but counsel declined. Id. The court established that the proposed amendment had not yet been adopted by the United States Sentencing Commission and had not, therefore, been submitted to Congress for adoption. Id. The court indicated if the Commission had adopted the amendment and sent it to Congress, the court would, in that circumstance, apply the proposed amendment. Id. at pp. 8-9. However, the proposed amendment in this case was not in the same posture. Id. at p. 9.

The court noted the PSR had been amended to take into account Mr. Hemsher's objection 6. Id. No further action was requested by counsel. Id. Objection 7 was overruled because it was premised on the court sustaining objections 2-5. Id.

The court overruled objection 8 to the fines, indicating the court would determine whether fines were appropriate. Id. at pp. 9-10. The court also

9

overruled objection 9, leaving the PSR as written, but indicating it would consider counsel's argument for departure or variance during the sentencing phase of the hearing.  Id. at p. 10.

Next, the government presented evidence from its case agent in support of the government's assertion that Mr. Hemsher's USSG base offense level should be increased for obstruction of justice.  Id. at pp. 10-16.  After hearing argument from both counsel regarding the increase, the court took the government's view and applied the enhancement.  Id. at pp. 19-21.  The government's objection was sustained.  Id.

The addition of the adjustment for obstruction of justice amended Mr. Hemsher's total offense level to 26, and resulted in a USSG sentencing range of 120-150 months' custody.  Id. at p. 21.

Counsel for Mr. Hemsher argued in favor of a downward departure or variance and a sentence of four to five years' incarceration.  Id. at pp. 21-23. He asserted the USSG sentencing range was excessive to achieve the goals outlined in 18 U.S.C. § 3553(a).  Id.  Counsel emphasized Mr. Hemsher's many good qualities, the fact he had a support network in Sioux Falls and three young children.  Id.  Mr. Hemsher declined the opportunity to address the court directly.  Id. at p. 24.

Friends of Mr. Hemsher's as well as his mother, aunt, grandmother, and cousin testified on his behalf, seeking leniency from the court.  Id. at pp. 24-27.

The government asked for a sentence of 120 months' imprisonment on both counts. Id. at pp. 28-29. Counsel pointed out the number of guns and emphasized what a danger stolen firearms present in this community. Id. Counsel also pointed out Mr. Hemsher's "obscenely" long criminal history, especially for a man of only 27 years. Id. Counsel also pointed out at no time had Mr. Hemsher accepted responsibility for his actions in connection with his charges. Id.

The court began by reviewing Mr. Hemsher's criminal history points and noted that "[s]omebody who's 27 that's already in the highest criminal history category is really concerning to me." Id. at pp. 29-30. A high criminal history category meant Mr. Hemsher was likely to reoffend. Id. at p. 30.

The court also noted there were times in Mr. Hemsher's life when he was drug-free when he did some incredible positive things. Id. But if Mr. Hemsher did not change who he chose to be friends with and did not choose to stay away from drugs, he would basically be giving himself a life sentence on the installment plan. Id. The court concluded a sentence within the USSG range, but at the bottom of that range, was appropriate. Id. at pp. 30-31.

The court sentenced Mr. Hemsher to 120 months' imprisonment on each count, both sentences to run concurrently with each other. See CR Docket No. 340 at p. 2. Mr. Hemsher filed a timely notice of appeal on May 23, 2017. See CR Docket No. 347. Thereafter, Mr. Engels withdrew as Mr. Hemsher's counsel and attorney Justin Bell was appointed to handle Mr. Hemsher's appeal. See CR Docket No. 353.

11

**D.    Appeal**

On appeal, counsel for Mr. Hemsher raised a number of issues involving sufficiency of the evidence at trial and evidentiary rulings.  United States v. Hemsher, 893 F.3d 525, 528 (8th Cir. 2018).  Pertinent to this § 2255 action, counsel also raised issues relating to the district court's calculation of Mr. Hemsher's sentence.  Id.

Specifically, counsel argued on Mr. Hemsher's behalf (1) the court erred in concluding he had possessed eight firearms, (2) the court erred in concluding he possessed the firearms in connection with another felony offense, (3) the court erred in applying the obstruction of justice enhancement, and (4) his sentence was procedurally and substantively unreasonable.  Id. at 533-36.  Regarding the last argument, counsel argued Mr. Hemsher's sentence was unreasonable because it was disparate from his codefendants Wingler and Marshall, who received sentences of seven and six months respectively.  Id. at 535.  The court rejected each of these arguments and affirmed the district court.  Id. at 533-36.

On August 3, 2018, the Eighth Circuit denied Mr. Hemsher's petitions for rehearing en banc and for rehearing by the original panel.  See CR Docket No. 398.  The court issued its mandate on August 14, 2018.  See CR Docket No. 399.  The Supreme Court denied Mr. Hemsher's petition for a writ of certiorari on November 5, 2018.  See Hemsher v. United States, ___ U.S.___, 139 S. Ct. 470 (2018).

**E.     Mr. Hemsher's § 2255 Motion**

Mr. Hemsher filed his § 2255 motion on September 30, 2019.  See
Docket No. 1. In his motion, Mr. Hemsher alleges trial counsel was ineffective
at sentencing for failing to object to a grouping error allegedly committed by the
PSR author and adopted by the district court.  Id. at p. 6.  He also argues
appellate counsel was ineffective for failing to raise relevant sentencing
arguments on appeal.  Id.

Mr. Hemsher's trial counsel, Mr. Engels, submitted an affidavit in this
§ 2255 action in which he concedes that, although he raised a number of
objections to the calculation of Mr. Hemsher's USSG sentencing range, he did
not raise the grouping error relied upon by Mr. Hemsher in his § 2255 motion.
See Docket No. 14.[2]  Mr. Hemsher filed a response to counsel's affidavit in
which he basically agreed:  although counsel objected to the USSG calculation,
he did not raise the specific grouping error alleged by Mr. Hemsher herein.  See
Docket No. 17.

Mr. Hemsher's appellate counsel, Mr. Bell, also submitted an affidavit in
this action.  See Docket No. 18.  He states that he was aware of the potential
grouping issue, but chose not to raise it on appeal because he believed the
issue would not be meritorious or successful on appeal.  Id.  Mr. Hemsher did
not file a response to counsel Bell's affidavit.

---

[2] Counsel also asserts Mr. Hemsher is wrong, as a matter of law, that there
*was* a grouping error.  See Docket No. 14.  This contention is discussed in
detail below in the DISCUSSION section of this opinion.

The government now moves to dismiss Mr. Hemsher's motion without holding an evidentiary hearing arguing there was no error as a matter of law in the calculation of Mr. Hemsher's advisory USSG range.  See Docket Nos. 20 & 21.  Mr. Hemsher did not respond to the government's motion.

**DISCUSSION**

**A.    Scope of a § 2255 Motion**

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners.  Davis v. United States, 417 U.S. 333, 343-44 (1974).  Section "2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  Id. at 343.  Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presented logistical issues because the record in the underlying criminal case were often in a distant location.  United States v. Hayman, 342 U.S. 205, 212-16 (1952).  The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court.  Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the

14

sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  See 28 U.S.C. § 2255.

Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255--relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal.  United States v. Frady, 456 U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001).  When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either:  (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner.  Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal, 249 F.3d at 749.  Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a

28 U.S.C. § 2255 motion such as the one here.  See United States v. Campbell,
764 F.3d 880, 892-93 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654
(8th Cir. 2004) (ineffective assistance of counsel claims are not generally
cognizable on direct appeal and will be heard only to prevent a miscarriage of
justice or in cases where the district court has developed a record on the
issue).  Therefore, no procedural default analysis applies to petitioner's claim of
constitutionally-deficient counsel.

**B.      Standard Applicable to Rule 12(b)(6) Motions**

The government's motion to dismiss Mr. Hemsher's § 2255 motion is
based on Federal Rule of Civil Procedure 12, specifically parts (b)(6) and (h)(3)
of Rule 12.  See Docket No. 29.  The Federal Rules of Civil Procedure are
applicable to § 2255 habeas actions so long as the procedural rules do not
conflict with the habeas statutes or the Rules Governing Section 2255 Cases in
the United States District Courts ("Governing Rules").  See Governing Rule 12.
Federal Rule of Civil Procedure 12(b)(6) is not inconsistent with the Governing
Rules.  Compare Governing Rules 4 & 5 (allowing respondent to respond to
petitioner's habeas petition with a motion), with FED. R. CIV. P. 12(b)(6) (same);
see also Ebert v. Clarke, 320 F. Supp. 2d 902, 909-10 (D. Neb. 2004) (holding
that FED. R. CIV. P. 12(b)(6) applies in habeas proceedings).

The government invokes Rule 12(h)(3), which allows dismissal for lack of
subject matter jurisdiction, but never supports its invocation with any evidence
or argument that this court lacks jurisdiction.  Indeed, Mr. Hemsher seeks to
attack the constitutionality of his conviction and this is the district in which he

16

was sentenced.  If *this* court does not have subject matter jurisdiction over Mr. Hemsher's claim, *what court does*?  Merely because the government believes Mr. Hemsher is not entitled to habeas relief on the claims he has asserted does not act to deprive this court of the power to hear and decide his claims.  The court rejects outright the government's citation to Rule 12(h)(3).

As to Rule 12(b)(6), that provision allows dismissal of a habeas petition if the petitioner has failed to state a claim upon which relief can be granted.  See FED. R. CIV. P. 12(b)(6).  Petitioners must plead "enough facts to state a claim to relief that is *plausible* on its face."  Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(emphasis added).

Under Federal Rule of Civil Procedure 8(a)(2), a petitioner must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Id. at 554-55 (quoting FED. R. CIV. P. 8(a)(2)).  A habeas petition does not need "detailed factual allegations" to survive a motion to dismiss, but a petitioner must provide the grounds for his entitlement to relief and cannot merely recite the elements of his cause of action.  Id. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  There is also a "plausibility standard" which "requires a [petition] with enough factual matter (taken as true)" to support the conclusion that the petitioner has a valid claim.  Id. at 556.  The petitioner's complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief.  Id.

17

There are two "working principles" that apply to Rule 12(b)(6) motions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a petition. Id. (citing Papasan, 478 U.S. at 286). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555). Rule 8 "does not unlock the doors of discovery for a [petitioner] armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79.

Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (quoting decision below Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007)). Where the petitioner's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the petitioner has alleged--but has not "show[n]"--that he is entitled to relief as required by Rule 8(a)(2). Iqbal, 556 U.S. at 679 (emphasis added).

The Court explained that a reviewing court should begin by identifying statements in the petition that are conclusory and therefore not entitled to the presumption of truth. Id. at 679-680. Legal conclusions must be supported by factual allegations demonstrating the grounds for a petitioner's entitlement to relief. Id. at 679; Twombly, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2). A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an

entitlement to relief." Iqbal, 556 U.S. at 679.  These are the principles guiding the court's evaluation of respondents' motion.

Rule 12(b)(6) requires the court to evaluate the sufficiency of a petitioner's pleading of a claim by examining his or her petition.  See FED. R. CIV. P. 12(b)(6); Iqbal, 556 U.S. at 679.  Rule 56, the rule for summary judgment, allows the court to consider affidavits, documents, deposition transcripts and other items extraneous to the petition in determining whether to grant the motion.  See FED. R. CIV. P. 56.

Courts evaluating a Rule 12(b)(6) motion are not strictly limited to evaluating the petition alone, however.  Dittmer Properties, L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013).  They may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." Id. (citing Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1357 (3d ed. 2004))).

When a respondent files a response to a § 2255 action, whether it be an answer or a motion to dismiss, the respondent is directed to attach any transcripts or other records the respondent considers to be relevant and which are not available in the court's records.  See Governing Rule 5(c).  Rule 4 specifically directs the court to examine the record of prior proceedings in that court.  See Governing Rule 4(b).  In addition, the government has supplied the

19

court with an affidavit from both of Mr. Hemsher's former counsel addressing Mr. Hemsher's allegations of ineffective assistance of counsel.  See Docket Nos. 14 & 18.

Finally, the court considers the entire record in Mr. Hemsher's underlying criminal case.  Because these documents are required by Governing Rule 5(c), and because these documents are of the type which the court would be allowed to judicially notice, the court considers these documents in ruling on respondents' Rule 12(b)(6) motion.  Dittmer Properties, L.P., 708 F.3d at 1021; FED. R. EVID. 201(b); Governing Rule 5(c).

## C.    Ineffective Assistance of Counsel

### 1.    The Standard for Ineffective Assistance Claims

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)). Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the

judgment.  Id. at 691.  The defendant must show, "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment."  Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002).  It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test."  Id.  Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation.  Bobby v. Van Hook, 558 U.S. 4, 7-9 (2009).  American Bar Association standards and similar directives to lawyers are only guides as to what reasonableness of counsel's conduct is, they are not its definitive definition.  Id.  The Supreme Court distinguishes between those cases in which the new evidence "would barely have altered the

sentencing profile presented to the sentencing judge," and those that would have had a reasonable probability of changing the result.  Porter v. McCollum, 558 U.S. 30, 41 (2009).  In assessing the prejudice prong, it is important for courts to consider "the totality of the available mitigation evidence 'both that adduced at trial, and the evidence adduced in the habeas proceeding'" and "reweigh it against the evidence in aggravation." Id. at 40-41.  It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44.  Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct.  Strickland, 466 U.S. at 698.

**2.    Application of the Standard to Mr. Hemsher's Claims**

Mr. Hemsher alleges there was a grouping error in calculating his advisory sentencing range under the USSG and trial counsel was ineffective for failing to ascertain the error and lodge an objection to it.  He further alleges appellate counsel was ineffective for failing to raise the same issue on direct appeal.  Hence, both of Mr. Hemsher's allegations of ineffective assistance of counsel stem from the same assertion:  that there was a legal error regarding grouping connected to the calculation of his USSG sentencing range that neither counsel raised.

The PSR applied the 2016 USSG to calculate Mr. Hemsher's sentence. See CR Docket No. 331 at p. 6, ¶16.[3] Under USSG § 3D1.2(d), both of Mr. Hemsher's convictions were grouped together in the PSR calculation. Id. Applying USSG § 2K2.1(a)(6), the PSR stated Mr. Hemsher's base offense level (for both counts), was 14. Id. at ¶17. The PSR then increased the base offense level 10 points for various specific offense characteristics (stolen firearm, possession of eight firearms, and possession of firearm in connection with another felony offense), each of which increases Mr. Hemsher's trial counsel objected to. Compare id. at ¶¶18-20, with CR Docket No. 320.

At sentencing, the district court adopted the proposed USSG calculation from the PSR with the exception that the court added two points to Mr. Hemsher's base offense level for obstruction of justice. See CR Docket No. 355 at p. 21. Mr. Hemsher's counsel also objected to this increase. Id. at pp. 18-19.

> In stating the advisory USSG range, the district court said the following:
>
> In light of that ruling [applying the obstruction of justice increase], the total offense level is a 26 and the Defendant's in Criminal History Category VI, which makes the advisory guideline range 120 to 150 months in custody; . . . And I should change the guideline range is 120 months because the statutory—120 to 150 months because there are two counts.

Id. at p. 21.

> In imposing sentence, the court stated:
>
> In deciding your sentence today, because you are in Criminal History Category VI, I think that a sentence within the advisory

---

[3] All of the court's citations to USSG provisions herein are to the 2016 edition.

guideline range is appropriate.  But I'm going to sentence you at
the bottom of that range.

Id. at p. 31.

Mr. Hemsher's ultimate conclusion is that, had the district court

calculated his USSG sentencing range correctly, his range would have been 90

to 120 months.  See Docket No. 1 at p. 16.[4]  Relying on Molina-Martinez v.

United States, 578 U.S. ___, 136 S. Ct. 1338 (2016), and Glover v. United

States, 531 U.S. 198 (2001), Mr. Hemsher argues any possibility that he could

have received a lower sentence is enough to demonstrate Strickland prejudice.

He points to the court's stated desire to sentence him at the bottom of his

USSG range and extrapolates if the bottom of his sentencing range had been

90 months, the court would have imposed that sentence instead of the 120-

month sentence the court did impose.

Although the court understands Mr. Hemsher's ultimate conclusion, it is

difficult to discern the route by which he arrives at that conclusion.  He

separately calculates out a sentencing range under the USSG for each count of

conviction and then selects the count which results in the *lower* sentencing

range.  See Docket No. 1 at pp. 16-17.  But that is not how the USSG direct

courts to calculate a sentence where there are multiple counts of conviction.

In general, the USSG require the court to determine the appropriate

offense guideline from Chapter Two, selecting the appropriate base offense

---

[4] Mr. Hemsher's calculations vary.  Sometimes he claims his sentencing range
would have been 100-125 months' imprisonment.  Docket No. 1 at pp. 16, 18.
Other times he appears to suggest his sentencing range would have been 90 to
120 months.  Id. at p. 20.

level.  <u>See</u> USSG § 1B1.1(a)(1) & (2).  Then the court is to apply adjustments as appropriate for specific offense characteristics, among other variables.  <u>Id.</u> at (a)(3).  If there are multiple counts, the court is to then perform the same calculation for each count.  <u>Id.</u> at (a)(4).  Next, applying Part D of Chapter 3 of the USSG, the court is to group various counts and adjust the offense level accordingly.  <u>Id.</u>

In this § 2255 action, although Mr. Hemsher does not agree with the court's application of the various specific offense characteristics which served to increase his base offense level, he is not raising any issue with regard to those increases.  <u>See</u> Docket No. 1 at pp. 16-17, n. 1-4.  In Mr. Hemsher's calculation of the USSG range for each of his offenses of conviction, the only difference between those two calculations are the specific offense characteristics applicable to each.  <u>Id.</u> at pp. 16-17.  Mr. Hemsher applies the specific offense characteristic for possessing a firearm that is also stolen (pursuant to USSG § 2K2.1(b)(4)(a)), only to count 4, possession of a firearm by a felon, and not to count 3, possession of stolen firearms.  <u>Id.</u>  Thus, in Mr. Hemsher's calculations, the USSG range for count 3 is lower because there are two fewer total offense level points.  <u>Id.</u>

Taking Mr. Hemsher's own calculations of the USSG range for his two offenses, the court then turns to the issue of grouping.  Section 3D1.1 states:

(a)    When a defendant has been convicted of more than one count, the court shall:

(1)    Group the counts resulting in conviction into distinct Groups of Closely Related Counts ("Groups") by applying the rules specified in § 3D1.2.

(2)    Determine the offense level applicable to each Group
by applying the rules specified in § 3D1.3.

(3)    Determine the combined offense level applicable to all
Groups taken together by applying the rules specified
in § 3D1.4

See USSG § 3D1.1(a).

Here, there were only two counts of conviction which also happen to
constitute closely related counts.  Therefore, they should have been—and
were—grouped together.  See USSG § 3D1.1(a)(1); CR Docket No. 331 at p. 6,
¶16.

Next, § 3D1.1(a)(2) requires the court to determine the offense level
applicable to each Group by applying the rules specified in § 3D1.3.  Here,
there is only one Group.  The base offense level for each offense is the same:
USSG § 2K2.1(a)(6) applies to both offenses.  See USSG § 2K2.1 and USSG
Appendix A at p. 582.  Section 2K2.1(a)(6) specifies a base offense level of 14
for either (both) offenses of which Mr. Hemsher was convicted.  Id.
Mr. Hemsher also uses a base offense level of 14 in his own calculations.  See
Docket No. 1 and pp. 16-17.

Section 3D1.3 requires the court to select and apply the offense level
from Chapter Two of the USSG which has the highest offense level.  See USSG
§ 3D1.3(a).  Here, according to Mr. Hemsher's own calculation, count 3 has a
total offense level of 24 while count 4 has a total offense level of 26 because
count 4 has one additional two-point increase for possession of a firearm that
is also stolen.  See Docket No. 1 at pp. 16-17.  Accordingly, pursuant to

26

§ 3D1.3, the court would have been required to select the *higher* offense level, which in Mr. Hemsher's own calculations was 26. That is, indeed, the offense level *actually adopted* by the court at sentencing. See CR Docket No. 355 at 21. Unaccountably, and contrary to § 3D1.3, Mr. Hemsher appears to argue that the court should have adopted the *lower* instead of the *higher* total offense level.[5] But that is simply not what the USSG direct. The court acted in accordance with the USSG's directive by applying the higher offense level.

Trial counsel for Mr. Hemsher understands Mr. Hemsher's grouping argument differently. Counsel characterizes Mr. Hemsher's argument as asserting the statutory maximum penalty capped the USSG range and that, therefore, the court should have stated Mr. Hemsher's USSG "range" was 120 months. See Docket No. 14 at p. 2, ¶¶4-5. Counsel asserts Mr. Hemsher's understanding is incorrect. Id. While the statutory maximum *did* cap the sentence itself that the district court could impose, it did not cap the USSG *range*, which counsel stated is not infrequently in excess of the statutory maximum. Id. As counsel notes, Mr. Hemsher concedes that 120 months is a sentence authorized by statute for both of his convictions. Id.

The government also subscribes to trial counsel's interpretation of Mr. Hemsher's argument. See Docket No. 21 at pp. 6-7. As the government notes, grouping offenses under USSG § 31D.2 merely affects the USSG

---

[5] "Unaccountably" because Mr. Hemsher acknowledges in his § 2255 motion that USSG § 3D1.3 requires the court to select the *highest* of the offense levels in a Group. See Docket No. 1 at p. 17.

27

sentencing range and "cannot change a statutory penalty." <u>Id.</u> at p. 7 (quoting <u>United States v. Knox</u>, 301 F.3d 616, 620 (7th Cir. 2002)). Therefore, the "highest guidelines range of the grouped offenses is the defendant's guidelines range even if the top of the range exceeds the statutory maximum for the offense in question." <u>Id.</u> (quoting <u>United States v. Spano</u>, 476 F.3d 476, 478 (7th Cir. 2007)).

Whether the court interprets Mr. Hemsher's § 2255 motion in accord with its own view, or adopts the interpretation of trial counsel and the government, the court concludes in either case that no grouping error was made in the PSR or by the district court at sentencing. As such, there was nothing to object to by trial counsel. Trial counsel's performance cannot be either deficient or prejudicial for failure to raise a frivolous objection that would have been sure to have been overruled. <u>Cf.</u> <u>Garrett v. United States</u>, 78 F.3d 1296, 1301-02 (8th Cir. 1996).

"While '[a] petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief,' no hearing is required 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.' " <u>New v. United States</u>, 652 F.3d 949, 954 (8th Cir. 2011) (quoting <u>Anjulo-Lopez v. United States</u>, 541 F.3d 814, 817 (8th Cir. 2008)). "A district court may deny an evidentiary hearing where (1) accepting the petitioner's allegations as true, the petitioner is not entitled to relief, or (2) 'the allegations cannot be accepted as true because they are

28

contradicted by the record, inherently incredible, or conclusions rather than statements of fact.' " Guzman-Ortiz v. United States, 849 F.3d 708, 715 (8th Cir. 2017) (quoting United States v. Sellner, 773 F.3d 927, 929-30 (8th Cir. 2014)).

Here, Mr. Hemsher's arguments fail as a matter of law and are conclusively refuted by the facts in the record. Accordingly, the court recommends that no evidentiary hearing be held.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends granting the government's motion to dismiss [Docket No. 20] and dismissing Mr. Hemsher's § 2255 motion without holding an evidentiary hearing.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED February 10, 2020.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge

29